**LAW OFFICES OF BRYAN W. PEASE**
Bryan W. Pease (SBN 239139)
302 Washington St. #404
San Diego, CA 92103
Ph. (619) 723-0369
Email: bryan@bryanpease.com

**LAW OFFICES OF G. DAVID TENENBAUM**
G. David Tenenbaum (SBN 150629)
269 S. Beverly Drive #1041
Beverly Hills, CA 90212
Ph. (312) 404-7723
Email: g.davidtenenbaum@gmail.com

**LAW OFFICES OF CASEY D. GISH**
Casey D. Gish (SBN 206289)
5940 S. Rainbow Blvd.
Las Vegas, NV 89118
Ph. (702) 583-5883
Email: casey@gishlawfirm.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA SATO, an individual; ROXANNE LOPEZ, an individual; and DILEY GREISER, an individual, <br><br> Plaintiffs, <br> v. <br><br> BRIAN GRIMM, an individual; J. GREGORY, an individual; DARREN GILMORE, an individual; and DOES 1-10, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **TEMPORARY RESTRAINING ORDER REQUESTED** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Defendants BRIAN GRIMM, DARREN GILMORE, and J. GREGORY are currently in the midst of an inter-state campaign of harassment, intimidation, and terror against animal rescuers, reporters, and anyone else who may know the whereabouts of dozens of German Shepherd dogs that the San Bernardino Sheriff's Department initially called on community members to help rescue from horrific conditions on unimproved land in the middle of the desert, but then determined must be returned to their abusers in order to limit the liability of the San Bernardino Sheriff's Department.

2. GRIMM is a detective, GILMORE is a sergeant, and GREGORY is a deputy with the San Bernardino Sheriff's Department. However, all are named here solely in their individual capacities for violating Plaintiffs' constitutional rights while acting under color of state law and not pursuant to an official policy or custom.

3. Multiple sources within the San Bernardino Sheriff's Department put out frantic calls for help to community members last month that San Bernardino Animal Control had seized dozens of German Shepherds abandoned in the desert, but had also left about 80 behind, and had already euthanized many of those seized. Rescue groups and other Good Samaritans sprang into action and rescued the animals left behind at their own expense and acting as volunteers.

4. Defendants have ever since been misrepresenting facts to obtain warrants in California and Nevada, harassing and interrogating Plaintiffs and others repeatedly despite being advised that all are represented by counsel, and confiscated Plaintiffs' cellphones and computers from their homes in violation of the First and Fourth Amendments, and have been threatening to come back again to do the same thing.

5. The purpose behind Defendants' actions appears to be to mitigate liability of the San Bernardino Sheriff's Department regarding dogs having been rescued at the behest of Sheriff's deputies, and the "attack dog" business now threatening to sue for hundreds of thousands of dollars, owned by Alla Zorikova. The website of this illegal and unpermitted business is http://www.vonmarkgrafgermanshepherds.us/

6. Unless immediately restrained and enjoined by the Court, Defendants will continue their lawless actions in a campaign of intimidation and terror aimed at punishing and deterring Plaintiffs from their ongoing volunteer activities and petitioning their government for redress of grievances.

7. Defendants know there is no valid basis for any criminal charges against Plaintiffs or any individuals believed to have been involved in rescuing the abandoned dogs from unimproved land in the desert last month, because multiple Sheriff's deputies affirmatively called and *asked* volunteer rescue groups to step in and rescue the animals. None of the rescue groups sold the animals or were paid for rescuing these animals.

8. Yet, Defendants are now showing up at multiple animal rescue volunteers' house in California and Nevada merely suspected of having information, interrogating them for hours despite being informed the parties are represented, separating them from their children, and treating them like criminals, all ostensibly for the purposes of locating the abused and neglected animals for purposes of returning them to their abusers. Defendants even showed up at the home of a *news reporter* in Nevada demanding information about the whereabouts of the dogs this week.

## JURISDICTION AND VENUE

9. This action arises under Title 42 United States Code ("U.S.C.") §1983. The Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343.

10. Venue under 28 U.S.C. §1391 in this Court is proper as a substantial part of the events or omissions giving rise to the claims alleged occurred in San Bernardino County, which is within the Central District of California.

## PARTIES

11. Plaintiff CHRISTINA SATO is an individual residing in San Bernardino County. Ms. Sato is a real estate agent who volunteers virtually all of her free time rescuing animals and working with organizations that provide free service animals to veterans and first responders affected by post traumatic stress disorder ("PTSD"). In addition to her love of animals, Ms. Sato was inspired to do this by her son returning

from service in Afghanistan with PTSD and needing a support animal, and finding that they typically cost thousands of dollars and are inaccessible to many returning veterans.

12. Plaintiff DILEY GREISER is an individual residing in San Bernardino County. Ms. Greiser is employed as a firefighter and also volunteers much of her time rescuing animals and working with various animal rescue organizations, including one that she runs herself as a volunteer.

13. Defendant BRIAN GRIMM is an individual residing in San Bernardino County and is a detective with the San Bernardino Sheriff's Department. GRIMM is named in his individual capacity only.

14. Defendant DARREN GILMORE is an individual residing in San Bernardino County and is a sergeant with the San Bernardino Sheriff's Department. GILMORE is named in his individual capacity only.

15. Defendant J. GREGORY is an individual residing in San Bernardino County and is a deputy with the San Bernardino Sheriff's Department. GREGORY is named in his individual capacity only. Plaintiffs are unaware of Defendant GREGORY'S first name and will amend the complaint to add it once determined.

16. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named DOE Defendants is responsible in some manner for the acts, omissions, and damages alleged herein. Plaintiffs are unaware of the true names and capacities of the DOE Defendants, and, therefore, sues these Defendants under such fictitious names. Plaintiffs are informed and believe and thereon alleges that each of said fictitiously named Defendants was the agent, servant and employee of each and every other Defendant acting within the course and scope of his or her agency and employment, and with the knowledge, ratification and consent of each respective principal. Plaintiffs will seek leave to amend this Complaint when their true names and capacities have been ascertained.

17. Regarding all actions and causes of action herein alleged and stated, all Defendants (including all DOE defendants) violated clearly established statutory or

constitutional rights held by Plaintiffs that they had a mandatory duty to uphold. No reasonable governmental official similarly situated to any of the Defendants could have believed that his/her conduct was lawful or within the bounds of reasonable discretion. As a result, all individual Defendants, including all individual DOE defendants, lack immunity from suit or liability under either statutorily created immunity or the judicially created doctrine of "qualified immunity".

## ALLEGATIONS OF FACT

**A.   San Bernardino Sheriff's Department asks for help rescuing animals**

18.   In August 2020, multiple San Bernardino County Sheriff's deputies contacted various animal rescue groups regarding a case of cruelty, abandonment, and neglect of German Shepherds in the desert and requested these volunteers remove neglected and abused dogs from property located near Hinkley, CA.

19.   The location of the property where the dogs were found was extremely remote, miles and miles into the middle of the desert, on vacant land. There were no dirt roads, no running water, or any housing structures. These dogs were quite literally left alone and abandoned in the desert.

20.   The dogs did not have any housing or shelter from the extreme elements of the blistering desert heat, which is a violation of California law[1] and San Bernardino

---

[1] California penal code 597(b) provides: "Except as otherwise provided in subdivision (a) or (c), every person who overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, drink, or shelter, cruelly beats, mutilates, or cruelly kills any animal, or causes or procures any animal to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, drink, shelter, or to be cruelly beaten, mutilated, or cruelly killed; and whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather, or who drives, rides, or otherwise uses the animal when unfit for labor, is, for each offense, guilty of a crime punishable pursuant to subdivision (d)."

County code.[2] The day that rescuers were on property, it was 104 degrees. Most of the dogs had dug holes in the ground over time to try to escape the heat because they had zero shelter. And those were the lucky ones. Some were permanently confined to small wire cages which offered no protection from the elements, which constitutes torture. Some were illegally tied up around the neck with chains.[3] Among the dogs rescued were pregnant females. Failing to provide adequate shelter; permanently confining dogs; and

---

[2] San Bernardino County code 32.0113 provides: Every person within the County of San Bernardino who owns, conducts, manages, or operates any animal establishment for which a license is required by this Chapter, shall comply with each of the following conditions:
  (a)   Housing facilities for animals shall be structurally sound and shall be maintained in good repair to protect animals from injury and restrict entrance of other animals.
  (b)   All animals and all animal buildings or enclosures shall be maintained in a clean and sanitary condition.
  (c)   All animals shall be supplied with sufficient good wholesome food and water as often as the feeding habits of the respective animals require.
  (d)   Animal buildings and enclosures shall be so constructed and maintained as to prevent the escape of animals.
  (e)   All reasonable precautions shall be taken to protect the public from the animals and animals from the public.
  (f)   Every building or enclosure wherein animals are maintained shall be properly ventilated to prevent drafts and to remove odors.  Heating and cooling shall be provided as required according to the physical needs of the animals.
  (g)   All animal rooms, cages, and runs shall be of sufficient size to provide adequate space for clean water and proper housing for animals kept therein.
  (h)   All animal runs shall be approved construction and shall be provided with adequate waste and manure disposal and for drainage into an approved sewer or individual sewer disposal installation.

[3] California Health and Safety code, division 105, part 6, chapter 8, section 122335 makes it illegal to tether a dog for longer than 3 hours in a 24-hour period. Further, California Penal Code 597(t) states that "every person who keeps an animal confined in an enclosed area shall provide it with an adequate exercise area. If the animal is restricted by a leash, rope, or chain, the leash, rope or chain shall be affixed in such a manner that it will prevent the animal from becoming entangled or injured and permit the animal's access to adequate shelter, food and water."

tying up dogs in extreme heat is a violation of California cruelty laws, and constitutes abuse and neglect.

21. Notably, while there were 80+ dogs living on the property, there were absolutely no feces on the ground; and veterinarians later confirmed the dogs' bellies were full of their own feces. Given there was not a single pile of feces, they were apparently consuming the same out of necessity. Failure to properly feed animals constitutes malnourishment and is reflective of abandonment and neglect. There was no running water on the property, or electricity, or any housing structure for humans to live in. The land was totally vacant with only a small makeshift shanty or shed that was filthy. The shed had no toilet, sink, shower or bed. Therefore, the dogs' alleged owners did not live there,[4] which indicates the dogs were left alone for long periods of time,[5] while tied up or caged in the middle of the desert and without food or water (or human interaction/companionship). They were exposed to predatory animals. There were dead animal carcasses all over (large bones and skulls) the property, which were possibly other dogs and animals that were used as food, or dogs that had died due to exposure or predators. The property smelled of decomposing flesh. There were two live goats that may have been slated as food for the dogs, and a chicken, which was perhaps intended to feed the dogs.[6] It also appeared, and smelled, that there was a rotting deer carcass that may have been being used to feed the dogs. These conditions all reflect a life of cruelty, abandonment and terrible neglect.

22. There was only one drum of liquid on the property. It contained red liquid and was covered in bugs. The dogs had no access to water to drink. Every single dog at the property was dehydrated, panting and extremely thirsty. Not one of the dogs had

---

[4] The arrest record of the dogs' alleged owner, Ms. Zorikova, reflects that her address is 1905 Wilcox Ave #175, Los Angeles, CA 90068.

[5] California penal code 597(s) makes it illegal to willfully abandon an animal.

[6] Ms. Zorikova and Ms. Jeong's website (www.vonmarkgrafgermanshepherds.us) claims they feed their dogs raw meat only.

water available to it when the rescuers arrived. This fact alone is a violation of San Bernardino County code 32.0113(c). Upon their arrival, rescuers provided water in pans for the dogs to drink.

23. A San Bernardino Sheriff's Deputy advised some of the rescuers prior to entering the unimproved land containing the dogs that the dogs' alleged owners did not own the land. Rather, this deputy believed the land was owned by the Bureau of Land Management.

24. Ms. Zorikova and Ms. Jeong represent themselves to be breeders of "protection dogs" which is based out of Los Angeles; and whose dogs are trained to bite (http://www.vonmarkgrafgermanshepherds.us). Pursuant to San Bernardino County Code, it is illegal to have more than 5 dogs on the property without a breeder license or kennel permit.[7] Additionally, training dogs to bite and be aggressive amounts to cruelty and neglect.[8]

25. The dogs that were rescued were all full of parasites[9] (including the pregnant dogs), which constitutes cruelty and reflects a life of abandonment and horrible neglect. Some showed signs of malnourishment and being underweight. Dogs had hookworms, round worms, and hernias; and some were double crypto. All were inbred as evidenced by widespread umbilical hernias and un-descended testicles throughout the population. Some had fractured teeth, which the veterinarians have advised is indicative

---

[7] San Bernardino ordinance 32.0301 defines a kennel as a place where more than 5 dogs are kept; and 32.0302 requires a permit. San Bernardino ordinance 32.0306 requires kennels to be disinfected and cleaned; and requires animals have access to "clean food and water" among other things.

[8] Ms. Zorikova and Ms. Jeong are training animals to violate California Health and Safety codes 398 and 399 relative to biting; and potentially to be fighting dogs pursuant to California penal code 597.5 and 597(b). Further, training animals to be dangerous or vicious violates Title 3, Division 2, Chapter 14 of San Bernardino local ordinances.

[9] San Bernardino ordinance 32.0306 requires kennel operators take preventative measures to prevent outbreaks of parasites.

of dogs trying to chew through their metal chains or metal enclosures, or even eating rocks. Veterinarians documented burnt paw pads, distended abdomens, and diarrhea in these dogs.

26. These dogs were very sick and their medical conditions were left untreated by Ms. Zorikova and Ms. Jeong. The dogs all had filthy coats, and were covered in dirt and sand from living a lifetime in the open desert. They all had extreme amounts of dirt in their ears, and unkept nails, some so long that the nails were growing into the pads of the dogs' feet. Others had green discharge from their nose, and loops of intestines. None of the dogs appeared to have been vaccinated against rabies, as required by California law and San Bernardino County code, nor was the property adequately fenced.

27. Ms. Zorikova and Ms. Jeong's website indicates they had puppies that were born on July 29, 2020. If true, the puppies would have been 10 days old by August 8 when animal control officers appeared at the property. When rescuers arrived, a San Bernardino Sheriff's deputy told the rescuers that Ms. Zorikova and Ms. Jeong had already removed the puppies from their nursing mother (the puppies were reportedly found in the shed). Removing puppies this young from their mothers is also a violation of animal cruelty laws. Ms. Zorikova and Ms. Jeong refused to identify the nursing mother to animal control officers. Therefore, officers were unable to obtain nourishment for the puppies. Because 10-day old (or three-week-old) puppies likely cannot survive without their nursing mother, Ms. Zorikova and Ms. Jeong are liable for cruelty and neglect for failing to identify the mother to animal control.

28. Upon Ms. Zorikova and Ms. Jeong's arrest for animal cruelty, only the 14 puppies were immediately seized by animal control, which euthanized the puppies.

29. Upon the release of Zorikova and Jeong from jail on animal cruelty charges, San Bernardino Animal Control returned all dogs they had seized in the days after these animal cruelty arrests, and the charges were then dropped, apparently based on the District Attorney believing there was not sufficient evidence of cruelty since the dogs had been given back.

30. Ms. Zorikova and Ms. Jeong's website indicates that they sell their "protection dogs" for up to $55,000, and they are willing to ship them anywhere. It is doubtful anyone would buy a parasite infested dog with broken teeth that is supposed to be a "bite dog" for $55,000. Therefore, Ms. Zorikova and Ms. Jeong are likely committing fraud by advertising the sale of healthy dogs without a license. It is also not likely that these dogs would withstand being shipped in their condition.

**B.     Defendants begin terrorizing suspected animal rescuers**

31. On September 3, 2020, Defendants showed up at Ms. Sato's home and claimed they had a search warrant, which they did not produce. About 20 minutes passed before Defendants finally produced a search warrant. During this time, Defendants ordered Ms. Sato to remain on her porch, and to "sit down" while they went inside and looked through her house before producing any warrant.

32. Ms. Sato's 9-year-old granddaughter was present and is now afraid of Sheriff's deputies, since Defendants barged into her room and scared her, causing her to hide behind the curtains.

33. Defendants misrepresented facts to obtain the overbroad warrant and searched the home of Ms. Sato, seized several items, including her iPhone, her laptop, her daughter's laptop that she needs for work, and mail addressed to Ms. Sato.

34. Ms. Sato's 31-year-old disabled daughter, Plaintiff Roxanne Lopez, lives with Ms. Sato and had her arm in a cast on this day from recent surgery. Defendants frightened Ms. Lopez, grabbed her by the arm that was in a cast, and tried to put her in handcuffs, causing further injury to her arm.

35. Defendants came in screaming and yelling loudly, treating the Sato family like criminals, and terrified a dog Ms. Sato had just rescued who was already afraid of humans and is now having even more severe behavioral issues, including gnawing his own arm severely, requiring antibiotics.

36. Ms. Sato regularly volunteer for animal rescue organizations as a foster and transporter. Ms. Sato has been doing this all her life and has never been paid for it. There

have been other situations where dogs have been abandoned in the desert in the past, and Ms. Sato has helped transport such animals. Ms. Sato believes Defendants suspect her of being involved in this particular event because of a Facebook post about her volunteer animal rescuing activities, and Defendants are targeting animal rescuers in the area.

37. Ms. Sato's other daughter who lives with her is 26-years-old, an EMT, and recently finished firefighter training school. She works nights and is applying for firefighting jobs. When Defendants took this daughter's laptop, she informed them that all of her certificates were on it and she needed it for a firefighting job application due the next day. She and Ms. Sato also informed Defendants the laptop belonged only to her and not to Ms. Sato. Defendants did not care and took the laptop anyway, which they have still refused to return.

38. Ms. Sato is afraid for her and her family's safety and security of her property, and that Defendants will keep coming back, taking phones and computers, leaving her without the ability to communicate. Having phones and computers seized has impacted Ms. Sato's and her daughter's work, and her ability to communicate. Ms. Sato will suffer irreparable harm if her and her family's property is not returned, and Defendants ordered not to continue seizing phones and computers from them.

39. On September 9, 2020, Defendants searched the home of Plaintiff Diley Greiser, seized several items belonging to her and her husband, including an iPad, bank statement, and cellphone.

40. Ms. Greiser informed Defendants at the time she has an attorney and to call him, but Defendants refused to stop questioning Plaintiff for several minutes. Defendant Grimm then finally called Plaintiff's attorney, Bryan Pease. After Defendant Grimm finished talking to Plaintiff's attorney, who instructed him again not to question Ms. Greiser and to direct all questions to counsel, Defendants continued questioning and interrogating Ms. Greiser.

41. Defendant Gilmore threatened to send more officers back to again search Plaintiff's home and look for more phones.

42. Ms. Greiser is employed as a firefighter and also runs an animal rescue nonprofit, which she does as a volunteer. Plaintiff relies on her phone to communicate with others and run her rescue. Plaintiff does not have a landline. Without a phone, Plaintiff's husband and Plaintiff would not even be able to call 911 in an emergency.

43. Plaintiff Greiser is afraid for her and her family's safety and security of their property, and that Defendants will keep coming back, taking phones and computers, leaving them without the ability to communicate, and will prevent them from running Plaintiff's animal rescue nonprofit. Plaintiff will suffer irreparable harm if her and her family's property is not returned, and Defendants ordered not to continue illegally seizing phones and computers.

44. Defendants also showed up at the home of an animal rescuer in Nevada on September 10, 2020 who is an animal rescuer suspected of having information about the dogs' whereabouts. Defendants produced yet another search warrant and terrorized this woman for several hours, separated her from her children, and interrogated her despite having previously been directly informed by Plaintiffs' counsel Casey Gish that he was representing this individual as well and all questions should be directed to him.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983

45. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

46. Title 42 U.S.C. § 1983 states in pertinent part: "Every person who, under color of [law] subjects, or causes to be subjected, any person of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law [or equity]."

47. The First Amendment protects Plaintiffs' rights to petition their government for redress of grievances, and to communicate with others, including in public forums such as the Internet and social media.

48. The Fourth Amendment protects against unlawful and unreasonable seizure

of property and persons.

49. The Fifth Amendment provides a right not to be forced to testify against oneself.

50. The Sixth Amendment protects the right to counsel.

51. The Fourteenth Amendment protects against deprivation of property without due process of law.

52. Defendants deprived Plaintiffs of their Constitutional rights guaranteed to them by the First, Fourth, and Fourteenth Amendments to the United States Constitution by improperly seizing their phones and computers without probable cause, and refusing to return this property.

53. These unlawful actions have also prevented Plaintiffs from being able to communicate with others, including hindering Plaintiffs' abilities to access the Internet and social media.

54. Defendants also deprived Plaintiffs of their Fourth Amendment rights by improperly seizing their persons during the unlawful searches of Plaintiffs' homes.

55. Defendants deprived Plaintiff Greiser of her Fifth and Sixth Amendment rights by repeatedly interrogating her despite knowing she was represented by counsel.

56. At no time did Plaintiffs give consent to Defendants' actions.

57. In committing the acts and omissions alleged herein, Defendants acted under the color of state law.

58. In committing the acts and omissions alleged herein, Defendants acted with malice, oppression and fraud, and with the intent to cause harm and/or offense to Plaintiffs.

59. Plaintiffs are entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, and all applicable law, and any other such relief as the Court deems just and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(1) For a temporary restraining order and preliminary and permanent injunction requiring the immediate return of property belonging to Plaintiffs and their families;

(2) For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants from seizing any more phones or computers from Plaintiffs or their family related to this case;

(3) For general and special compensatory damages (including direct, indirect, and emotional damages), and punitive damages, in amounts to be determined by the trier of fact, against all Defendants.

(4) For reasonable attorney's fees and costs and expenses of litigation, pursuant to United States Code §§ 1983-1988, and any other relevant statutory or case law, against all Defendants.

(5) For such other and further legal and equitable relief as the Court deems just and proper.

Dated: September 11, 2020          By:   /s/ Bryan W. Pease
                                         Bryan W. Pease
                                         Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to each and every legal cause of action against each and every defendant.

Dated: September 11, 2020          By:   /s/ Bryan Pease
                                         Bryan W. Pease
                                         Attorney for Plaintiff