UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-1876 JGB (SPx)** | Date | August 18, 2022 |
|---|---|---|---|
| Title | ***Roxanne Sato, et al. v. Brian Grimm, et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendants' Motion for Summary Judgment (Dkt. No. 51); (2) DENYING AS MOOT Plaintiffs' Motion to Dismiss (Dkt. No. 68); and (3) VACATING the Hearings on August 22 and September 12, 2022 (IN CHAMBERS)

Before the Court is the motion for summary judgment filed by Defendants San Bernardino County, Brian Grimm, J. Gregory, and Darren Gilmore. ("Motion," Dkt. No. 51.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. Plaintiffs' motion to dismiss Defendant Gregory ("MTD," Dkt. No. 68) is therefore **DENIED AS MOOT**. Accordingly, the hearings on August 22 and September 12, 2022 are **VACATED**.

## I.   BACKGROUND

This is a civil rights case. On September 11, 2020, Plaintiffs Christina Sato, Roxanne Lopez, and Diley Greiser filed a complaint against Defendants Detective Brian Grimm, Deputy J. Gregory, and Sergeant Darren Gilmore of the San Bernardino County Sheriff's Department (collectively, "Officer Defendants"), as well as San Bernardino County and Does 1-10 (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs filed a first amended complaint on September 14, 2020, adding Chelsea Ward as a plaintiff. ("FAC," Dkt. No. 8.) On March 4, 2021, the Court granted-in-part and denied-in-part Defendants' motion to dismiss. ("MTD Order," Dkt. No. 35.) Plaintiffs then filed a second amended complaint on March 19, 2021, adding Jamie Gregory as a plaintiff. ("SAC," Dkt. No. 36.) The SAC alleges two causes of action: (1) violation of 42 U.S.C. § 1983 based on deprivation of Fourth Amendment rights

against Officer Defendants; and (2) municipal liability under 42 U.S.C. § 1983 against San Bernardino County.  (SAC ¶¶ 58-84.)

Defendants filed the Motion on July 15, 2022, along with a request for judicial notice ("RJN," Dkt. No. 53).  Plaintiffs opposed the Motion on August 1, 2022 ("Opposition," Dkt. No. 63); and Defendants replied on August 8, 2022 ("Reply," Dkt. No. 64).  Plaintiffs then filed a motion to dismiss Defendant Gregory on August 15, 2022.  (See MTD.)

## II.   REQUEST FOR JUDICIAL NOTICE

Defendants request judicial notice of two documents:

- Exhibit A: Plaintiffs' second amended complaint, filed in this action on March 19, 2021; and

- Exhibit B: Defendants' answer to the second amended complaint, filed in this action on April 2, 2021

(RJN at 2.)  The RJN is unopposed.  "Because neither party objects to the court taking judicial notice of the existence of these documents" whose accuracy cannot reasonably be questioned, the Court **GRANTS** the RJN.  See Call v. Badgley, 254 F. Supp. 3d 1051, 1061 n.5 (N.D. Cal. 2017) (citing Fed. R. Evid. 201(b)).

## III.   FACTS

### A. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. Proc. 56(e).  At the summary judgment stage, courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial.  See, e.g., Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  The Court considers Defendants' objections only where necessary.[1]  (See "Objections," Dkt. No. 65.)  All other objections are **OVERRULED AS MOOT**.

---

[1] "[O]bjections to evidence on the ground that it is . . . speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here.  Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").  At the summary judgment stage, the Court focuses on the admissibility of the evidence's contents, not the admissibility of its form.  Fed. Deposit Ins. Corp. v. N.H. Ins. Co., 953 F.2d 478, 485 (9th Cir. 1991) ("[T]he nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

### B. Undisputed Facts

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted. These material facts are "admitted to exist without controversy" for purposes of the Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Plaintiffs are volunteers with various animal rescue organizations. ("SUF Reply," Dkt. No. 66, ¶ 3.) Plaintiffs allege that a deputy, or deputies, of the San Bernardino Sheriff's Department ("SBSD") contacted animal rescue groups on August 9, 2020, to request that they remove neglected and abused German Shepherds from a remote desert property near Hinkley, California. (See SAC ¶¶ 21, 22; but see SUF Reply ¶ 4.)[2] Ten days later, on August 19, 2020, SBSD received a formal complaint from Alla Zorikova. (SUF Reply ¶ 1.) She told SBSD that her German Shepherds—which she alleged were worth over $800,000—had been stolen from her property near Hinkley, California. (Id.) Defendant Detective Grimm was assigned to investigate the reported theft. (Id. ¶ 2.) Rescue groups and other individuals removed some of the German Shepherds from the property and transported them to various locations. (Id. ¶ 5.)[3]

On or around September 1, 2020, SBSD received a copy of a private Facebook message thread that discussed the taking and transporting of the German Shepherds. (Id. ¶ 6.) That thread indicated that Plaintiff Christina Sato was coordinating transport of the dogs and was the source of information to others on the thread. (Id. ¶ 7.)[4] Based on the information in the thread, Grimm requested a search warrant for Sato's home and property. (Id. ¶ 8.)[5] Grimm's request for the search warrant included a statement of probable cause that stated in part:

> On Tuesday, September 1, 2020, Jennifer Fuller contacted [SBSD] that she had information regarding our investigation into the theft of German Shepherds from the Hinkley area. Fuller provided me with a private social media thread which

---

[2] The parties agree that "a" deputy contacted the groups (SUF Reply ¶ 4), but the evidence cited in support of that fact alleges that "multiple sources" or "multiple . . . deputies" contacted the groups (SAC ¶¶ 2, 21).

[3] Defendants' cited evidence indicates that "volunteer rescue groups" and "other Good Samaritans" removed the dogs. (See SAC ¶¶ 2, 6.)

[4] Plaintiffs dispute this fact but fail to provide a pincite to the voluminous supporting evidence (see "Facebook Messages," Ex. 9 to Pease Decl., Dkt. No. 63-2 (90 pages long)), in violation of this Court's Standing Order regarding motions for summary judgment. (See "Standing Order," Dkt. No. 12, at 7, 8.) Therefore, the Court deems the fact undisputed. See Agbaosi v. Garland, 2022 WL 677581, at *12 (C.D. Cal. Jan. 28, 2022) (treating a proffered "factual statement as undisputed" because the objection to that statement lacked a pincite, "directly violat[ing]" the court's standing order regarding motions for summary judgment).

[5] Plaintiffs dispute this fact but provide no pincite to the voluminous supporting evidence, so the Court deems this fact undisputed. See Agbaosi, 2022 WL 677581, at *12.

indicated Christina Sato was arranging and coordinating several animal rescue groups to collect and steal the German Shepherds.

(Id. ¶ 9.)[6]

On September 2, 2020, a judge issued a search warrant for Sato's home. (See id. ¶ 10.) Before preparing and serving the search warrant, Officer Defendants were not aware of Deputy Kelsey Parsons, or any other deputy, contacting Sato about retrieving or rescuing the German Shepherds. (Id. ¶ 11.)[7] The sole purpose of the search was to locate information about the reportedly stolen dogs. (Id. ¶ 12.)[8]

On September 3, 2020, Officer Defendants arrived at the home of Sato and Plaintiff Lopez. (Id. ¶ 13.) Officer Defendants identified themselves as deputies. (Id.) After the location was secured, Sato was presented with the search warrant. (Id. ¶ 14.)[9] While conducting the search, Grimm took Sato's statement in which she admitted to going to the property and transporting some of the dogs. (Id. ¶ 15.) Sato also admitted that some of the dogs were given to Plaintiff Jamie Gregory. (Id. ¶ 16.) Lopez, Sato's daughter who was also present during the search, refused to cooperate with the deputies and refused to follow instructions.[10] (See id. ¶ 17.) She was aggressive and physically resistant, and she directed obscenities at the deputies. (Id. ¶

---

[6] Plaintiffs dispute this fact but provide no pincite to the voluminous supporting evidence, so the Court deems this fact undisputed. See Agbaosi, 2022 WL 677581, at *12.

[7] Plaintiffs dispute this fact but provide no pincite to the supporting evidence, so the Court deems this fact undisputed. See Agbaosi, 2022 WL 677581, at *12. Regardless, Plaintiffs' supporting evidence does not show that, before seeking and executing the warrants, Officer Defendants were aware that Parsons contacted Sato about rescuing or retrieving the German Shepherds. (See SUF Reply ¶ 12; see also Opposition at 12 (citing evidence that Defendants were aware only that a "government whistleblower" contacted rescue groups).)

[8] Plaintiffs dispute this fact but offer no contradictory evidence. For example, the fact that officers determined early on in their investigation that they were "not going to seize the dogs" ("Guerry Depo.," Ex. 11 to Pease Decl., Dkt. No. 63-2, at 53 (emphasis added)) does not contradict Defendants' proffered fact that officers searched Sato's home only to locate information about the reportedly stolen dogs.

[9] Plaintiffs dispute this fact but cite no evidence to support their dispute. (See SUF Reply ¶ 18.)

[10] Plaintiffs dispute this fact by arguing that the deputies gave no instructions to Lopez. (See SUF Reply ¶ 17.) But Plaintiffs' cited evidence—i.e., Lopez's deposition (pages 18, 19, and 21)—does not indicate that the deputies gave her no instructions. (See "Lopez Depo.," Ex. 12 to Pease Decl., Dkt. No. 63-2, at 18, 19, 21.) In fact, such evidence appears nowhere in her deposition excerpts. (See generally Lopez Depo.)

18.)[11] While Lopez acted aggressively with Officer Defendants, Defendant Sergeant Gilmore performed a control hold on Lopez. (Id. ¶ 19.)[12] Gilmore grabbed her in a "rough[]" manner, putting her hand—covered in a cast, "from [her] thumb to [her] elbow"—behind her back, which caused two weeks of pain. (See Lopez Depo. at 18, 19, 21.) Because Sato refused to provide information to the deputies and because Lopez refused to cooperate, the deputies determined that Sato's cellphone and laptops in her home would likely have pertinent information on the investigation, so they seized those items pursuant to the warrant. (SUF Reply ¶ 21.)[13] The search warrant permitted the seizure of "[a]ny written or electronically stored documentation relating to the possession, treatment, or sales of the stolen German Shepherds," including documentation on cellphones or computers. (Id. ¶ 22.)[14]

On the aforementioned Facebook thread, someone posted a photograph of a white Dodge truck at the property registered in the name of Jeff Greiser. (Id. ¶ 23.) The information of Plaintiff Diley Greiser ("Greiser") was also posted in the thread. (Id. ¶ 24.) Based on the information in the thread, Grimm requested a search warrant for Greiser's home and property. (Id. ¶ 25.)[15] Included with the search warrant request was a statement of probable cause, which included the following:

> In the private message thread, there is a post with Diley Greiser's contact screen. In the photographs from the message thread provided by Fuller, a Dodge truck was seen with a German Shepherd inside a kennel in the bed of the truck. The photographs appear to be at the property where the dogs were stolen from. A record check on the Dodge truck, Arizona license plate CRM1296, comes back to a Jeffrey Greiser.

---

[11] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 18.) Instead, Plaintiffs' evidence supports some of Defendants' proffered fact. (See Lopez Depo. at 16, 17 (being "really distressed" and "not knowing what was going on," Lopez says she "may have cursed" when the deputies asked who she was).)

[12] Plaintiffs incorrectly assert that multiple "Defendants" performed the control hold. (See SUF Reply ¶ 19.) They also incorrectly state that the control hold was performed by Gregory and that Grimm and Gilmore were "superior officers" who should have stopped him. (See Opposition at 14.) In reality, Gilmore—the supervising sergeant—performed the control hold. (See Gilmore Decl. ¶ 13; see also Lopez Depo. at 22 (clarifying that "one" deputy moved her arm behind her back and "the other four" were "just standing").)

[13] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 21.) Moreover, Plaintiffs provide no pincite to their voluminous supporting evidence. See Agbaosi, 2022 WL 677581, at *12.

[14] Plaintiffs dispute the validity of the warrant (see SUF Reply ¶ 22), but that does not contradict the fact that the warrant permitted the seizure of particular categories of items.

[15] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 25.)

(Id. ¶ 26.)[16] A judge issued a search warrant for Greiser's home. (Id. ¶ 27.) Before preparing and serving the search warrant, Officer Defendants were not aware of Parsons, or any other deputy, contacting Plaintiff Greiser about retrieving or rescuing the German Shepherds. (Id. ¶ 28.)[17] The sole purpose of the search was to locate information about the reportedly stolen dogs. (Id. ¶ 29.)[18]

On September 9, 2020, Grimm and Gilmore arrived at Greiser's home and identified themselves as deputies. (Id. ¶ 30.) Greiser was presented with the search warrant. (Id. ¶ 31.) Defendant Deputy John Gregory was not present for the search of Greiser's home. (Id. ¶ 32.) While conducting the search, Grimm took Greiser's statement, and she informed him that she had an attorney, Bryan Pease. (Id. ¶ 33.)[19] After Greiser told the deputies to contact her attorney, it is unclear whether Grimm and others continued questioning her. (See id. ¶ 33.) Grimm then called Pease. (Id.) Pease told Grimm either not to question Greiser or that Greiser was not permitted to give Grimm any information. (See id. ¶ 34.) After that call, it is unclear whether Grimm continued questioning or requesting information from Greiser. (See id. ¶ 35.) The deputies determined that Greiser's cellphone would likely have pertinent information about the investigation, so they seized it pursuant to the search warrant.[20] (Id. ¶¶ 36, 37.)

On the aforementioned Facebook thread, Plaintiff Chelsea Ward was also identified. (Id. ¶ 38.) On August 31, 2020, Grimm called Ward and her attorney. (Id. ¶ 39.) During the call, Ward and her attorney provided no information or identification on deputies' involvement in the removal of the German Shepherds. (Id. ¶ 40.)[21] Also during the call, Grimm determined that Ward was involved in transporting the German Shepherds. (See id. ¶ 41.)[22]

---

[16] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 26.)

[17] Plaintiffs dispute this fact but provide no pincite to the supporting evidence. See Agbaosi, 2022 WL 677581, at *12. Moreover, Plaintiffs' evidence does not support their dispute. (See SUF Reply ¶ 28.)

[18] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 29.)

[19] Plaintiffs dispute proffered fact 33, but not this portion of it. (See SUF Reply ¶ 33.)

[20] Plaintiffs dispute these facts but offer no contradictory evidence. (See SUF Reply ¶¶ 36, 37.)

[21] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 40.) Plaintiffs cite an irrelevant page (five) of their offered evidence, yet even the relevant pages (two and three) say only that a "government whistleblower employed by San Bernardino County" contacted rescue groups for their assistance. (See "Audio Recording of Call with Ward," Dkt. No. 55-3, at 2, 3.)

[22] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 41.)

On September 1, 2020, Grimm contacted the North Las Vegas Police Department ("NLVPD") and provided them with details about the case. (Id. ¶ 42.)[23] The officer that Grimm spoke with—Detective Allen Antonowicz—agreed to obtain and serve a search warrant for Ward's home. (Id. ¶ 43.) When speaking with Antonowicz, Grimm provided the following statement of probable cause: "On Wednesday, August 12, 2020, Plaintiff Ward called [SBSD] and said she was in possession of some of the stolen German Shepherds. Defendant Grimm spoke with Plaintiff Ward and attorney Casey Gish who confirmed knowledge of the stolen dogs." (Id. ¶ 44.)

On September 10, 2020, a judge issued a search warrant for Ward's home. (Id. ¶ 45.) Before preparing and serving the search warrant, Officer Defendants were not aware of Parsons, or any other deputy, contacting Ward about retrieving or rescuing the German Shepherds. (Id. ¶ 46.)[24] The sole purpose of the search was to locate information about the reportedly stolen dogs. (Id. ¶ 47.)[25] At Ward's home, NLVPD officers identified themselves as law enforcement and presented the search warrant to Ward. (Id. ¶ 48.) The officers searched Ward's home and took photos. (Id. ¶ 49.) SBSD deputies, including Grimm and Gilmore, did not search Ward's home or take photos. (Id. ¶ 50.) Defendant Deputy Gregory was not present for the search. (Id. ¶ 51.) During the search, Ward took responsibility for transporting two German Shepherds, which she knew had been adopted. (Id. ¶ 52.)[26] Ward also stated that she knew where the two German Shepherds were located, but she refused to divulge the information without a court order. (Id. ¶ 53.) In addition, Ward took responsibility for arranging an animal rescue organization to take 18 additional dogs. (Id. ¶ 54.) No property or items were seized from Ward's home. (Id. ¶ 55.)

On the aforementioned Facebook thread, Plaintiff Gregory was also identified. (Id. ¶ 56.) On September 2, 2020, Grimm contacted the Metropolitan Las Vegas Police Department ("MLVPD") and gave them details on the case. (Id. ¶ 57.)[27] Grimm spoke with Detective Vallad, who agreed to obtain and serve a search warrant on Gregory's home. (Id. ¶ 58.) Grimm provided the following statement of probable cause to Vallad:

> On Tuesday, September 1, 2020, Jennifer Fuller contacted the San Bernardino County Sheriff's Department and said she had information regarding our

---

[23] Plaintiffs dispute this fact but offer no evidence that contradicts the fact that Grimm provided them with details about the case. (See SUF Reply ¶ 42.)

[24] Plaintiffs dispute this fact but provide no pincite to the supporting evidence, so the Court deems this fact undisputed. See Agbaosi, 2022 WL 677581, at *12. Moreover, Plaintiffs' evidence does not support their dispute. (See SUF Reply ¶ 46.)

[25] Plaintiffs dispute this fact but offer no contradictory evidence. (See SUF Reply ¶ 47.)

[26] Plaintiffs dispute "that this first came up during the search," but the proffered fact does not state that. (See SUF Reply ¶ 52 (emphasis added).)

[27] Plaintiffs dispute this fact but offer no evidence that contradicts the fact that Grimm gave them details on the case. (See SUF Reply ¶ 57.)

> investigation into the theft of German Shepherds from the Hinkley area. Fuller provided me with a private social media thread which indicated Christina Sato and Jamie Gregory were directly involved with the theft of the German Shepherds. The messages indicated Sato was arranging and coordinating with Jamie Gregory to collect and steal the German Shepherds. Defendant Grimm contacted Christina Sato and she confirmed that Jamie Gregory was involved in the theft of the dogs.

(Id. ¶ 59.)[28]  A judge then issued a search warrant for Gregory's home.  (See SUF Reply ¶ 60.)  Before contacting MLVPD and serving the warrant, Officer Defendants were not aware of Parsons, or any other deputy, contacting Gregory about retrieving or rescuing the German Shepherds.  (Id. ¶ 61.)[29]  The only purpose of the search was to locate information about the reportedly stolen dogs.[30]

At Gregory's home, a MLVPD officer identified himself as law enforcement and presented Gregory with the search warrant.  (Id. ¶ 63.)  MLVPD officers search the home and took photos.  (Id. ¶ 64.)  SBSD deputies, including Grimm and Gilmore, assisted with the search and also took photos; but Defendant Gregory was not present.  (Id. ¶¶ 65, 66.)[31]  The deputies determined that Plaintiff Gregory's cellphone and laptops would likely have pertinent information about the investigation, so they seized those items pursuant to the search warrant.  (Id. ¶ 67.)[32]

## IV. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  Id. at 325.

---

[28] Plaintiffs dispute the validity of the statement of probable cause, but they do not dispute that Grimm provided this statement.  (See SUF Reply ¶ 59.)

[29] Plaintiffs dispute this fact but provide no pincite to the supporting evidence, so the Court deems this fact undisputed.  See Agbaosi, 2022 WL 677581, at *12.  Moreover, Plaintiffs' evidence does not support their dispute.  (See SUF Reply ¶ 61.)

[30] Plaintiffs dispute this fact but offer no contradictory evidence.  (See SUF Reply ¶ 62.)

[31] Plaintiffs dispute fact 65 but offer no contradictory evidence.  (See SUF Reply ¶ 65.)

[32] Plaintiffs dispute this fact but provide no pincite to the supporting evidence, so the Court deems this fact undisputed.  See Agbaosi, 2022 WL 677581, at *12.  Moreover, Plaintiffs offer no evidence contradicting the fact that deputies determined that the items would likely have pertinent information about the investigation.  (See SUF Reply ¶ 67.)

Instead, the moving party need only prove there is an absence of evidence to support the non-moving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). It is not the court's task to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The non-moving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the non-moving party fails to make this showing, then "[t]he moving party is entitled to a judgment as a matter of law." Celotex, 477 U.S. at 323.

### V.  DISCUSSION

Defendants seek summary judgment in their favor on Plaintiffs' two claims: (1) a Section 1983 claim for Fourth Amendment and Fourteenth Amendment violations against Officer Defendants and (2) a Monell claim against San Bernardino County.

**A. Claim 1: Fourth and Fourteenth Amendment Violations**

Plaintiffs allege that Officer Defendants (1) engaged in judicial deception to obtain search warrants without probable cause (SAC ¶¶ 62, 72, 74, 77, 78); (2) seized their property without probable cause (id. ¶ 62); and (3) used unreasonable force against Lopez (Opposition at 13, 14; see also SAC ¶ 63).[33]

  **1. Defendant Gregory**

Defendant Gregory must be dismissed from this action because he was not involved in the alleged constitutional violations. He was not involved in obtaining the search warrants; and he was not present for the searches of the homes of Greiser, Ward, or Gregory. (SUF Reply ¶¶ 32, 51, 66.) Accordingly, the Court **GRANTS** summary judgment to Defendant Gregory on all claims against him.

  **2. Judicial Deception**

Plaintiffs allege that Officer Defendants[34] engaged in judicial deception by "[s]ubmitting false information" in their affidavits to obtain the search warrants without probable cause. (See

---

[33] The Court construes Plaintiffs' claim that Defendants "improperly seize[d] their persons during the unlawful search of Plaintiffs' homes" (see SAC ¶ 64) as a claim for unreasonable force because that is how Plaintiffs' briefed the issue. (See Opposition at 13-14 (featuring header titled, "Defendants' restraint of Lopez was unreasonable"); see also SAC ¶ 37 (alleging that Defendants injured Lopez's arm).)

[34] Because Defendant Gregory is dismissed, "Officer Defendants" now refers only to Defendants Grimm and Gilmore, unless otherwise noted.

SAC ¶ 77.) However, because Grimm is the only defendant that drafted the relevant affidavits, Plaintiffs may raise their judicial-deception claim only against Grimm. (See SUF Reply ¶¶ 9, 26, 44, 59 (noting that Grimm provided the statements of probable cause); see generally "Gilmore Decl.," Dkt. No. 57 (noting that Gilmore was involved only in the searches).) Grimm maintains he possessed probable cause that the relevant Plaintiffs committed grand theft, which is the unlawful taking of another person's property valued at over $950. See Cal. Penal Code § 487.

The Fourth Amendment protects the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Because warrantless searches and seizures inside a home are "presumptively unreasonable," officers may not enter a suspect's home without a warrant, absent exigent circumstances. Payton v. New York, 445 U.S. 573, 586, 590 (1980). To be valid, a search warrant must (1) be issued by a neutral magistrate judge; (2) be supported by probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense; and (3) describe with particularity the things to be seized and the place to be searched. United States v. Artis, 919 F.3d 1123, 1129 (9th Cir. 2019).

To survive summary judgment on their judicial-deception claim, Plaintiffs "must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

Here, the SAC alleges that Grimm's affidavits contain four misrepresentations: (1) a false claim that an "unknown person" notified animal rescue groups about the German Shepherds—when, allegedly, "[t]he County knows" that the notification "came from within [SBSD]"; (2) misrepresentation of the German Shepherds as stolen; (3) misrepresentation of the dogs that Plaintiff Ward possessed as stolen; and (4) misrepresentation that Ward's attorney "confirmed the knowledge of the stolen dogs." (SAC ¶¶ 71-74.)

The first statement is not a misrepresentation: It is undisputed that before preparing and serving the search warrants, Officer Defendants were not aware of any SBSD official contacting animal rescue groups about the German Shepherds. (See SUF Reply ¶¶ 11, 28, 26, 61.) That leaves three misrepresentations alleged in the SAC, which all turn on Grimm's characterization of the dogs as "stolen."

Next, the Court must determine whether those misrepresentations were material. To do so, "the court purges those statements and determines whether what is left justifies issuance of the warrant." Ewing v. City of Stockton, 588 F.3d 1218, 1224 (9th Cir. 2009). It is true that when Grimm drafted the affidavits, he did not know for certain that the dogs were stolen—Defendants themselves admit they "could not definitely state whether Plaintiffs committed a crime until the investigation was completed." (Reply at 5.) Even so, Plaintiffs fail to establish that Grimm's labeling the dogs as stolen in his affidavits was material to the findings of probable cause. Removing the "stolen" label does not "cast doubt on the existence of probable cause" for

grand theft. Cf. Ewing v. City of Stockton, 588 F.3d 1218, 1226 (9th Cir. 2009) ("The omission of facts rises to the level of misrepresentation only if the omitted facts cast doubt on the existence of probable cause."); see also SUF Reply ¶ 2 (Plaintiffs label as "[u]ndisputed" the proffered fact that "Grimm was assigned to investigate the reported theft" (emphasis added)). Putting aside the "stolen" labels, ample probable cause still exists: SBSD received a formal complaint from Zorikova informing them that her German Shepherds, allegedly valued at more than $800,000, had been stolen (SUF Reply ¶ 1); SBSD later received a copy of a Facebook message thread discussing the taking and transporting of the German Shepherds (id. ¶ 6); and the thread identified Plaintiffs Sato, Greiser, Ward, and Gregory as being involved in the removal of the dogs (id. ¶¶ 7, 23, 24, 38, 56). Plaintiffs even admit that "Defendants already have evidence that Plaintiffs had been involved in transporting the dogs." (Opposition at 12.)

In their Opposition, Plaintiffs allege additional misrepresentations and omissions not alleged in the SAC. (Compare SAC with Opposition at 7-11.) The Court similarly finds that those alleged misrepresentations and omissions are either not material or are not, in fact, misrepresentations or omissions. For example, Plaintiffs argue that Officer Defendants do not specify the information they found in the Facebook thread before requesting a search warrant for Sato's home (Opposition at 7-9), but it is undisputed that the messages indicated that Sato was coordinating the transport of the dogs and was the source of information to the other individuals on the thread (see Section III of this Order ("Facts Section")). As another example, Plaintiffs contend that Defendants falsely stated that they determined during their call with Ward that she was involved in transporting the dogs (Opposition at 9, 10), but that fact is undisputed, not false (see Facts Section). Other alleged misrepresentations focus on the "stolen" label, which, as discussed earlier, is not material to the finding of probable cause.

Accordingly, the Court concludes that Grimm's alleged misrepresentations and omissions were not material, probable cause existed to issue the search warrants, and the warrants are valid. Therefore, the Court **GRANTS** summary judgment to Grimm and Gilmore on Plaintiffs' claim for judicial deception.

3. **Unreasonable Seizure of Property**

Next, Plaintiffs argue that Officer Defendants seized their cellphones and computers "for unlawful reasons." (Opposition at 11-13.) Seizures of property are ordinarily unreasonable, unless accomplished pursuant to a warrant issued by a neutral magistrate after finding probable cause. Illinois v. McArthur, 531 U.S. 326, 330 (2001).

Here, as discussed earlier, the search warrants were valid. They permitted officers to search Plaintiffs' homes and seize any "written or electronically stored documentation relating to the possession, treatment, or sales of the stolen German Shepherds," including on cellphones or computers. (SUF Reply ¶¶ 22, 37, 68.) Pursuant to the warrants, Officer Defendants seized cellphones and laptops from Plaintiffs' homes, believing they likely had pertinent information about the investigation. (See Facts Section.) Although Plaintiffs argue, without support, that the "true purpose" of the searches was "not to uncover evidence of a crime" but to "identify the

'government whistleblower'" (Opposition at 13), that issue is irrelevant: "[T]he subjective motivations" of individual officers "has no bearing" on whether a seizure is unreasonable. Graham v. Connor, 490 U.S. 386, 397 (1989). The Court therefore concludes that Grimm and Gilmore permissibly seized Plaintiffs' property.

Accordingly, the Court **GRANTS** summary judgment to Grimm and Gilmore on Plaintiffs' claim for unreasonable seizure of property.

### 4. Unreasonable Force

Gilmore allegedly used unreasonable force against Lopez by "grabbing her casted arm" in a control hold. (See Opposition at 13, 14.)[35]

Claims of unreasonable force are evaluated under the Fourth Amendment's objective-reasonableness standard. Graham, 490 U.S. at 397. Factors to consider in evaluating the reasonableness of force used to effect a seizure include "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape." Liston v. Cnty. of Riverside, 120 F.3d 965, 976 (9th Cir. 1997), as amended (Oct. 9, 1997) (citing Graham, 490 U.S. at 388). Ultimately, the applied force "must be balanced against the need for that force: it is the need for force which is at the heart of the Graham factors." Id. (citation and quotations omitted). Still, the reasonableness of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Thus, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397 (citations and quotations omitted).

Here, Lopez, who was present during the search of her mother's home, refused to cooperate with the deputies and refused to follow instructions. (SUF Reply ¶ 17.) She was aggressive and physically resistant, and she directed obscenities at the deputies. (Id. ¶ 18.) While she acted aggressively with deputies, Gilmore performed a control hold on Lopez. (Id. ¶ 19.) What happened next is disputed by both sides. Because of that genuine dispute, the Court "must assume" Plaintiffs' "version of the facts to be correct" for purposes of summary judgment. Liston, 120 F.3d at 977.

The Court thus assumes that Gilmore grabbed Lopez in a "rough[]" manner, putting her hand—covered in a cast, "from [her] thumb to [her] elbow"—behind her back. (See Lopez

---

[35] Plaintiffs incorrectly state that the control hold was performed by Gregory and that Grimm and Gilmore were "superior officers" who should have stopped him. (See Opposition at 14.) Plaintiffs also incorrectly state that multiple "Defendants" performed the control hold. (See SUF Reply ¶ 19.) In reality, Gilmore—the supervising sergeant—performed the control hold. (See Gilmore Decl. ¶ 13; see also Lopez Depo. at 22 (clarifying that "one" deputy moved her arm behind her back and "the other four" were "just standing").)

Depo. at 18, 19, 21.)  Lopez appears to somewhat conflate the pain from the control hold with the pain from her recent thumb surgery.  (See id. at 18 (noting that her casted "arm . . . was already in pain" due to surgery); see id. at 38 (describing the pain from the control hold as "shooting pain" that was "kind of hard to explain because it was my thumb. . . . Because I just had . . . my thumb surgery so it was cut up and I have scars. . . . It was my arm"; then summarily answering "yes" to "Was that in addition to the pain that you were experiencing from the operation?").)  Although Lopez describes the pain as a nine out of ten, she did not go to the doctor for it—she only "took pain medication or ignored it," then after two weeks "[i]t healed."  (Id. at 21, 38, 39.)  Considering that the deputies were searching a home due to a reported grand theft, and considering Lopez was aggressive and physically resistant, refused to cooperate and follow instructions, and directed obscenities at the deputies, the Court finds that Gilmore's control hold—which "was just additional pain" (id. at 21)—was not unreasonable.

Moreover, even if Gilmore's use of force were unreasonable, Gilmore is entitled to qualified immunity on this claim.  As to qualified immunity, Plaintiffs "bear[] the burden of showing that the right at issue was clearly established," Alston v. Read, 663 F.3d 1094, 1098 (9th Cir. 2011), yet Plaintiffs "fail to cite any controlling authority clearly establishing" that Gilmore's use of force violated Lopez's constitutional rights, Loudermilk v. Arpaio, 592 F. App'x 596, 597 (9th Cir. 2015).  In fact, as to qualified immunity on this claim, Plaintiffs say nothing.  (See Opposition.)

Accordingly, the Court **GRANTS** summary judgment to Gilmore and Grimm on Plaintiffs' claim for unreasonable force.

## B.  Claim 2: Monell Liability

Lastly, Plaintiffs allege that San Bernardino County has an "unconstitutional policy or custom of holding onto people's personal electronic equipment" for "several months or more when seized as part of an investigation, despite having the ability to quickly copy the data and return the items."  (SAC ¶ 81.)

Under Section 1983, municipalities are liable when a plaintiff is injured pursuant to (1) an "official policy," such as "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978), or (2) an unofficial custom or "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law," City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (citation and quotations omitted).  For the latter, the practice or custom "may not be predicated on isolated or sporadic incidents." Trevino v Gates, 99 F.3d 911, 918 (9th Cir. 1996).  Instead, "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Id.

Here, Plaintiffs waited approximately 18 months for San Bernardino County to return their seized property.  (SUF Reply at 64; see Guerry Depo. at 22.)  An isolated incident of alleged

misconduct, however, cannot establish an unconstitutional custom.  Trevino, 99 F.3d at 918.  Plaintiffs also allege that San Bernardino County has an unconstitutional written policy.  (Opposition at 18.)  That policy, taken from SBSD's Manual, is: "All seized property, regardless of category, shall be dispositioned as soon as possible. . . . Property shall not be dispositioned without the written approval of the case agent of the appropriate division designee."  (Id.)  Plaintiffs make no effort to explain how that policy is unconstitutional.  Instead, Plaintiffs explain why "the County's actions in holding onto the [seized property] for a year and a half" are allegedly unconstitutional.  (See id. (emphasis added).)  But again: an isolated incident of alleged misconduct cannot establish an unconstitutional custom.

Accordingly, the Court **GRANTS** summary judgment to San Bernardino County on Plaintiffs' Monell claim.

## VI.   CONCLUSION

For the reasons above, the Court **ORDERS** as follows:

1. Defendants' motion for summary judgment is **GRANTED**.

2. Plaintiffs' motion to dismiss is **DENIED AS MOOT**.

3. The hearings on August 22 and September 12, 2022, are **VACATED**.

4. The Clerk is directed to close the case.

5. Judgment in Defendants' favor shall issue accordingly.

**IT IS SO ORDERED.**